## Richmond.

### OSBORNE *v.* CABELL AND ALS.

April 26th, 1883.

1. MORTGAGOR—*Purchaser of mortgaged premises—Subrogation—Case at bar.*—In 1860, C. borrowed of L. $2,853.08, and executed bond secured by trust deed on lot in R. In January, 1862, C. conveyed lot to B. for certain sum cash, and his assuming the trust debt. In November, 1862, B. conveyed lot to H. for certain sum cash, and his assuming the trust debt. In 1865, agreement was executed between H. and O. for adjustment of all claims between them, and in pursuance thereof H. conveyed lot to O. for $1,000, and his promise to pay the trust debt. H. failed to perform his part of the agreement, and continued indebted to O. in the sum of $3,000. The trust debt remaining unpaid, L. sold lot for $1,566.65 net, which was credited thereon, leaving balance unpaid of $1,402.25, as of 4th September, 1867, which C. pays. In 1875, C. institutes chancery suit against B., H. and O. At hearing, circuit court decreed against O. for that balance. On appeal—

HELD:
   1. The failure of H. to perform his agreement with O., absolved O. from his promise to pay the trust debt.
   2. C. stands in H.'s shoes, and is substituted to the rights and remedies of H. against O., *and nothing more.* But as H. failed to perform his agreement with O., and on that account remained indebted to O. in the sum of $3,000, H. has no rights and remedies against O., and therefore C. has none.
   3. As against B., C. has a direct claim, founded on B.'s covenant to him to pay the trust debt.
   4. As against H., C. is substituted to B.'s rights and remedies, which would appear to be complete.
   5. C.'s claim against O. did not become a personal one, because there was no consideration moving to O. from H.

2. IDEM—*Idem—Idem—The principle.*—The ground whereon purchaser of mortgaged premises, having purchased subject to a mortgage for which

his grantor was liable, and assumed payment as part of the price, is held personally liable to the creditor in suit to foreclose, is that *inter sese,* purchaser becomes principal in the debt which has been credited on the price, and grantor is merely surety ; the creditor, being entitled by subrogation to all the securities held by his debtor, is allowed the benefit of the agreement of the purchaser.

3. IDEM—IDEM—*Idem—No right of action—Equities.*—In such case, creditor acquires no right of action against purchaser, but only the right to be subrogated to the rights of the debtor, subject to all equities between the purchaser and his immediate grantor.

4. IDEM—*Idem—Idem—Decree against last purchaser.*—When there is an unbroken chain of liability upon each purchaser to his immediate grantor, there may be a decree in the first instance against the person ultimately liable ; but if there be nothing due, under their agreement, from the ultimate purchaser to his immediate grantor, neither the latter nor the creditor can recover against him.

Appeal of John J. Osborne to decree of chancery court of the city of Richmond, rendered against him on 14th June, 1879, in a chancery suit therein pending, wherein Henry C. Cabell was plaintiff, and Francis J. Barnes, Edward D. Hitchcock and the said John J. Osborne were defendants.

The facts of the case and the object of the suit are fully indicated in the syllabus and stated in the opinion of the court.

*Cannon & Courtney,* for the appellant.

*Jas. Pleasants,* and *J. A. Cabell,* for the appellees.

HINTON, J., delivered the opinion of the court.

The appellee, Henry C. Cabell, on the 30th day of April, 1860, borrowed from James Lyons, special commissioner in the suit of *Vaughan and als.* v. *Goddin and als.*, then depending in the circuit court of the city of Richmond, the sum of $2,853.08, and executed his bond to said Lyons, commissioner, in the proper penalty, with William Daniel, Jr., as surety, and conditioned for the payment of the principal sum and interest in such time and

in such manner as said court should direct; and at the same time he also conveyed, by deed, in which his wife united, a certain lot of land in the city of Richmond to said Lyons in trust to secure the payment of the money so borrowed, with interest according to the condition of said bond.

In January, 1862, the said Cabell and wife conveyed the same lot of land to Francis J. Barnes in consideration of a certain sum of money in cash and his assuming to pay the debt secured by the aforesaid trust deed. This deed was also executed and acknowledged by Barnes.

In November, 1862, Barnes conveyed the same lot of land to E. D. Hitchcock for a certain sum in cash and the assumption by Hitchcock of the debt due to Lyons, commissioner.

On the 4th day of December, 1865, an agreement was executed by and between Hitchcock and the appellant, John J. Osborne, for the purpose of adjusting and settling all unsettled claims between them as individuals and also as partners; and in pursuance of that agreement Hitchcock conveyed the said lot to Osborne in consideration of the sum of $1,000 and the assumption and promise of Osborne to pay the said debt according to the tenor of the bond and trust deed executed by Cabell. Each of these deeds was executed and acknowledged, as well by the respective grantees therein and by the grantors and their respective wives.

Hitchcock having failed to perform his part of the agreement of December 4, 1865, Cabell was called upon by Lyons, commissioner, to pay the principal and interest accrued on his bond, and upon his failing so to do, the lot of land was sold by Lyons as trustee and commissioner, in September, 1867, at public auction, in pursuance of the deed of trust, for the net amount of $1,566.65.

In March, 1869, a judgment was rendered in the circuit court of the city of Richmond, against Cabell and his surety, Daniel, in favor of Lyons, commissioner, for the amount of Cabell's bond, subject to a credit for the aforesaid sum of $1,566.65.

In 1870, Commissioner Lyons sued the appellant, Osborne, in the circuit court of Richmond, on the law side thereof, for the balance due on Cabell's bond. In this suit, judgment *upon a case agreed* was rendered for Osborne. Whereupon Lyons, commissioner, applied for a *supersedeas,* which was refused by all the judges of this court.

In February, 1875, the appellee, Cabell, instituted suit in the chancery court of the city of Richmond, against Barnes, Hitchcock and Osborne, and levied an attachment on the real estate of Osborne, who is a non-resident.

On the 20th day of November, 1875, the said Cabell filed in court an amended and supplemental bill. Both bills were taken for confessed as to the defendants, Barnes and Hitchcock, but were answered by Osborne.

The facts were agreed in the action of covenant brought by Lyons, commissioner, against Osborne, and the record of that suit was filed by Osborne with his answer. On the 14th day of June, 1879, the cause was heard, when a decree was rendered in favor of Cabell for the balance due after crediting the debt secured by the deed of trust, by the net proceeds of the sale of the lot. From this decree Osborne has been allowed an appeal to this court.

The sole question to be determined, is whether the chancellor should have decreed against Osborne, or should have dismissed the bill as to him.

As preliminary to this inquiry, let us see what were Hitchcock's rights against Osborne. The circumstance that the deed to the lot in Richmond, the deed of trust on the Lancaster plantation, and the agreement, were all executed in the same city, on the same day, and acknowledged before the same magistrates, when taken in connection with the fact that the agreement contemplates the execution of those deeds, to fully effectuate its objects, clearly shows that these writings are but parts of one transaction, and should be construed as one entire

instrument. *Anderson* v. *Harvey's heirs,* 10 Gratt. 396; *French* v. *Townes et als.,* 10 Gratt. 522.

The plain purpose of these parties, fully expressed in the agreement, was to settle and adjust all the various and conflicting claims which they had against each other; to reduce them into certain definite and ascertained demands; and to embody them in one contract, in which some of the provisions were to be performed by Osborne on condition that the others should be performed by Hitchcock. By the terms of this contract Hitchcock, amongst other things which he is required to do, is to convey to Osborne the lot in Richmond; all the book debts, notes, accounts, bills receivable and choses in action of the late firm of Hitchcock & Osborne, and to deliver to him as many cords of pine wood as should net him the sum of $20,000, at the very least. And Osborne, on the other hand, as a part consideration for all this assumes to pay the debt due from Cabell to Lyons, commissioner. That these provisions and covenants were intended to be dependent, seems to us obvious, but if this intention were not so plainly manifest, the good sense and justice of the case requires that they should be so construed. 1 Wms. Saund. 320, *n.* 4. *Bream* v. *Marsh,* 4 Leigh, 25.

Now, not only has not Hitchcock performed his part of this agreement, but, as the agreed facts show, he was and is indebted to Osborne, under that agreement, for more than the sum of $3,000. And this failure to perform his part of this agreement has absolved Osborne from his obligation to indemnify him against the payment of the mortgage debt.

In this aspect, the inquiry comes to this: can the appellee, Cabell, who has no contract relations with Osborne, and who when he paid off the deficiency to Lyons, commissioner, merely paid off his own debt, compel Osborne, under the circumstances before detailed, to indemnify him for that deficiency?

Now that the weight of reason, if not of authority, is in favor of the proposition that no mere covenant with a mortgagor

is sufficient, without some consideration moving from the mortgagor, to make the debt a personal one of the purchaser, we think beyond dispute, and in this view we are confirmed by the absolute inability of the various courts to center upon any particular principle as a common ground for such a liability. *Daniel et als.* v. *Leitch*, 13 Gratt. 207 ; *Cumberland* v. *Codrington*, 3 Johns. Ch. Rep. 229 ; *Crowell* v. *Hospital of St. Barnabas*, 27 N. J. Eq. Rep. 650; *Meech* v. *Ensign*, Conn. Rep., vol. 49, advanced sheets, part 2. He cannot recover therefore on that ground. Nor are we able to discover, Osborne's promise being clearly not for the *sole* benefit of Cabell, any distinct principle upon which he can be held liable.

The usual ground upon which a grantee of mortgaged premises, who has purchased subject to a mortgage for which his grantor was primarily liable, and has assumed the payment of the mortgage debt as a part of the consideration, is personally liable to the mortgagee in a suit to foreclose the mortgage, is that as between the parties to the deed the grantee thereby becomes the principal debtor for the mortgage debt which has been allowed to him out of the purchase money, and the grantor is thenceforward merely a surety for the debt; and then, upon the familiar principle that the creditor is entitled by way of equitable subrogation to all the securities held by a surety of the principal debtor, *the mortgagee is entitled to the benefit of this agreement made by the purchaser*, although he did not know of its existence until long afterwards. And then a court of equity, having all of the parties before it, allows the mortgagee to recover a deficiency of the grantee by a mere rule of procedure, going directly as a creditor against the grantee, in order to avoid a circuity of action, and save the mortgagor as an intermediate party, from being harassed for the payment of the debt, and then driven to seek relief over against his grantee, upon whom the liability must ultimately fall. In such cases, however, the mortgagee does not acquire a right of action against the purchaser, but the benefit flowing to him from the contract

is limited to a right to be subrogated to the rights of the debtor. His right is simply a right of substitution, subject, however, to the equities between the purchaser and his immediate grantor. 1 Jones on Mortgages, section 755; *Crowell* v. *Currier*, 27 N. J. Eq. Rep. 154; *Crowell* v. *Hospital of St Barnabas*, id. 650. And see also the case of *Willard* v. *Worsham*, 76 Va. Reports, page 392, where Staples, J., in speaking for this court, says, "the creditor, upon familiar principles, may claim the benefit of all the collateral securities held by his debtor, by way of equitable subrogation. In doing so, however, he stands in his debtor's shoes, and is substituted to the rights and remedies of the latter, *but nothing more*. In other words, the new creditor takes the place of the old one, and succeeds to his rights." The mortgagor is entitled to nothing more. If, as in the case of *Whitlock* v. *Gordon's adm'r*, Va. L. J., 1877, page 378, there is an unbroken chain of liability upon each purchaser to his immediate grantor, the court may, in the first instance, decree against the person ultimately bound. But if, as in the present case, there be nothing due from the ultimate purchaser to his immediate grantor, then neither the mortgagor nor mortgagee can recover anything of him. *Flagg* v. *Munger*, 5 Seld. Rep. 483; *Dunning et al.* v. *Leavitt*, 85 N. Y. 34.

The decree of the chancery court of the city of Richmond must be reversed, the bill be dismissed as to the appellant, Osborne, the attachment against the property of the said Osborne be abated, and a decree entered in conformity with the views herein expressed.

*Lacy*, and *Fauntleroy*, J.'s, concurred in the opinion of the court.

*Lewis*, P., and *Richardson*, J., dissented.

The decree is as follows:

The court is of opinion, for reasons stated in writing and filed

Decree.

with the record, that the said chancery court erred in failing to dismiss the bill of the plaintiff as to the appellant, Osborne, and in failing to abate the attachment issued and levied on the real estate of said Osborne. It is therefore decreed and ordered that the said decree be reversed and annulled, and that the appellees, the plaintiffs in the court below, pay to the appellant his costs by him expended in the prosecution of his appeal and *supersedeas* here. And this cause is remanded to the said chancery court with instructions to dismiss the plaintiffs' bill as to said defendant, Osborne, and to abate the attachment issued and levied on said Osborne's real estate, and to render such other decree as it may deem proper in conformity with the views in said written opinion expressed.

DECREE REVERSED.